INSURANCE COMPANY OF NORTH AMERICA, and Crystal Boat Company, a State of Washington, United States of America, partnership, Plaintiffs-Appellees,

v.

MARINA SALINA CRUZ, a naval shipyard owned and operated by the Republic of Mexico, Defendant-Appellant.

No. 79–4050.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Feb. 23, 1981.

---

Beverly May Carl, Dallas, Tex., argued for defendant-appellant; Gordon J. Tans, James M. Powell, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Alaska, on brief.

Julian Mason, Anchorage, Alaska, argued for plaintiffs-appellees; Dunn, Baily & Mason, Anchorage, Alaska, Mark S. Cole, Seattle, Wash., on brief.

Before WALLACE, HUG and SCHROEDER, Circuit Judges.

WALLACE, Circuit Judge:

Marina Salina Cruz (the shipyard) secured permission to appeal, pursuant to 28 U.S.C. § 1292(b), from the district court's denial of a motion to dismiss. The shipyard contends: (1) that the district court lacks personal jurisdiction over the shipyard, (2) that sovereign immunity bars the action, and (3) that the action should be dismissed on the basis of *forum non conveniens.* We agree that there is no personal jurisdiction and reverse on that ground. We do not reach the sovereign immunity or *forum non conveniens* issues.

I

The Crystal Boat Company (CBC) is a Seattle partnership. The three partners are all residents of the State of Washington. CBC purchased the lobster fishing vessel *Crystal S* in Massachusetts in early 1974. CBC partner Oaksmith traveled to Salina Cruz, on the southern west coast of Mexico, on two occasions prior to the ship's arrival to arrange with the shipyard for modifications to make the vessel suitable for crab fishing. The shipyard is owned and operated by the Navy of the Republic of Mexico. The primary function of the shipyard is the maintenance of Mexican naval vessels. It does some work on private vessels.

The *Crystal S* was in the shipyard for about eight weeks. CBC partners Ness and Norness stayed at the shipyard during most of the period, and the vessel's captain was there during the entire period supervising the work. The cost of modifications and repairs was $19,000. Although the issues were disputed, the district court found that at the time of the repairs the officials of the shipyard knew of the vessel's intended use in Alaska, and also found that the shipyard had made repairs on several other vessels that its officials knew would be used in Alaska.

Further work on the equipment of the *Crystal S* was done in Seattle over a period of several weeks, after which the *Crystal S* sailed for Alaska. On August 12, 1974 the *Crystal S* sank off Akutan Island, Alaska.

CBC and the Insurance Company of North America (insurance company), the insurer of the ship, brought an action in the United States District Court for the District of Alaska alleging that the shipyard had improperly performed certain modifications on the *Crystal S* which led to its sinking. The district court found that the vessel ceased running, turned over, and sank within Alaska's three mile limit. The value of the vessel at that time was approximately $1,000,000.

II

The district court found jurisdiction over the shipyard on the basis of the Alaska long arm statute, Alaska Stat. § 09.05.-015(a). That statute has been construed by the Alaska Supreme Court to "establish jurisdiction to the maximum extent permitted by due process." *Jonz v. Garrett/Airesearch Corp.,* 490 P.2d 1197, 1199 (Alaska 1971). We therefore need only consider whether asserting jurisdiction over the shipyard would violate the Due Process Clause of the Fourteenth Amendment. *See Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978).

An assertion of *in personam* jurisdiction over a non-resident defendant does not violate due process if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*International Shoe*), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). If the non-resident defendant's activities within a state are neither "substantial" nor "continuous and systematic," the existence of jurisdiction depends on the nature and quality of those of the defendant's contacts that are related to the cause of action. *Data Disc, Inc. v. Systems Technology Assocs.*, 557 F.2d 1280, 1287 (9th Cir. 1977) (*Data Disc*); *see International Shoe, supra*, 326 U.S. at 319, 66 S.Ct. at 159. We use the following approach in evaluating these contacts:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Data Disc, supra*, 557 F.2d at 1287 (citations omitted).

■ We need not decide whether the first and second of the *Data Disc* conditions are met in this case because we conclude that the third condition is not met. It is not reasonable to require the shipyard to defend this suit in Alaska.

The reasonableness condition is an integral part of the *International Shoe* minimum contacts standard. Contacts satisfying the standard in the case of a corporation were described by the Supreme Court as

such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An "estimate of the inconveniences" which would result to the corporation from a trial away from its "home" or principal place of business is relevant in this connection.

*International Shoe, supra*, 326 U.S. at 317, 66 S.Ct. at 158. *See also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (*World-Wide Volkswagen*); *Kulko v. Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

■ There is no mechanical or quantitative test for jurisdiction under the *International Shoe* reasonableness standard, *Kulko v. Superior Court, supra*, 436 U.S. at 92, 98 S.Ct. at 1696, *International Shoe, supra*, 326 U.S. at 319, 66 S.Ct. at 159, and we shall not attempt to list all the factors that might, in a different case, be part of an assessment of the reasonableness of subjecting a defendant to jurisdiction. For purposes of the present case we conclude that the following seven factors are relevant: (A) the extent of the purposeful interjection into the forum state, *see Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Data Disc, supra*, 557 F.2d at 1288; (B) the burden on the defendant of defending in the forum, *see World-Wide Volkswagen, supra*, 444 U.S. at 292, 100 S.Ct. at 564; *International Shoe, supra*, 326 U.S. at 317, 66 S.Ct. at 158; (C) the extent of conflict with the sovereignty of defendant's state, *see World-Wide Volkswagen, supra*, 444 U.S. at 293–94, 100 S.Ct. at 565; (D) the forum state's interest in adjudicating the dispute, *see World-Wide Volkswagen, supra*, 444 U.S. at 292, 100 S.Ct. at 564; *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); (E) the most efficient judicial resolution of the controversy, *see World-Wide Volkswagen, supra*, 444 U.S. at 292, 100 S.Ct. at 564; (F) the importance of the forum to plaintiff's interest in convenient and effective relief, *see World-Wide Volkswagen, supra*, 444 U.S. at 292, 100 S.Ct. at 564; *Kulko v. Superior Court, supra*, 436 U.S. at 92, 98 S.Ct. at 1696; and (G) the existence of an alternative forum.

### III

A. *Purposeful Interjection.*

In assessing reasonableness in *Data Disc*, we asserted that:

it may be unreasonable to subject an out-of-state defendant to jurisdiction where the allegedly tortious act is committed outside of the forum state, having only an effect within the state, if the act is negligent rather than purposeful. The degree to which a defendant interjects himself into the state affects the fairness of subjecting him to jurisdiction.

*Data Disc, supra,* 557 F.2d at 1288.

■ Even if there is sufficient "interjection" into the state to satisfy the first *Data Disc* condition, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the third *Data Disc* condition. We do not decide whether the negligent repairing of a ship with knowledge that it is to be used in a distant state is a sufficient act to count as availing the shipyard "of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* at 1287. If such repairs on the ship in question and a few other ships constitute the only contacts with the forum, however, the slightness of the purposeful interjection militates against the reasonableness of jurisdiction.

If there was a purposeful interjection of the shipyard into Alaska, it was of a minimal sort. The shipyard performed no services in Alaska. There was no solicitation of Alaskan business through salespersons or advertising. No telephone number is listed in Alaskan directories. Moreover, as suggested in *Data Disc,* negligent action at a distance causing injury within the forum, which is all that is alleged here, is less an interjection into the state than would be action intended to injure.

In *World-Wide Volkswagen,* an Audi sold by the defendant New York retailer and the defendant New York-New Jersey-Connecticut distributor was involved in an accident while passing through Oklahoma. The Supreme Court found "a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction." *World-Wide Volkswagen, supra,* 444 U.S. at 295, 100 S.Ct. at 566. The shipyard's contacts with the fo-rum differ from those of the defendants in *World-Wide Volkswagen* in two important respects. First, the New York retailer and regional distributor in *World-Wide Volkswagen* did not sell the Audi with knowledge that its intended use was to be in Oklahoma. Second, there was no evidence that the retailer or distributor had sold any other cars with knowledge that they would be used in Oklahoma. We need not decide whether these two differences are sufficient to distinguish the present case from *World-Wide Volkswagen* with respect to the issue of purposeful interjection taken in isolation pursuant to the first *Data Disc* test. We reach the same result as *World-Wide Volkswagen* on the wider minimum contacts issue in concluding that it is unreasonable, all things considered, to exercise jurisdiction over the shipyard in the present case. The similarity of the facts here to those of *World-Wide Volkswagen,* even if not dispositive, dramatizes the minimal nature of the shipyard's purposeful interjection into Alaska. *See also Cascade Corp. v. Hiab-Foco Ab,* 619 F.2d 36 (9th Cir. 1980).

■ The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise. *See World-Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567.

### B. *Burden of Defense.*

■ Modern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum. *See World-Wide Volkswagen, supra,* 444 U.S. at 292–93, 100 S.Ct. at 564; *Hanson v. Denckla, supra,* 357 U.S. at 251, 78 S.Ct. at 1238; *McGee v. International Life Ins. Co., supra,* 355 U.S. at 222–23, 78 S.Ct. at 200. That burden is more significant here where the shipyard is called upon to defend an action in Alaska. CBC and the insurance company concede that there is no direct transportation service to, or presumably from, Salina Cruz. Even if good transportation were available, the distance from southern Mexico to Anchorage is significant. The shipyard would face serious problems in transporting witnesses

and evidence to Alaska. Testimony and documents would need to be translated. The fact that the personnel at the shipyard are members of the Navy might pose additional complications because of the special demands of naval duty assignments.

 It is, of course, true that many of the inconvenience burdens in this case are symmetrical. As the shipyard would need to provide for translation into English if the trial were in Alaska, so CBC and the carrier would need to provide for translation into Spanish if the trial were in Mexico. The law of personal jurisdiction, however, is asymmetrical. The primary concern is for the burden on a defendant. *See World-Wide Volkswagen, supra*, 444 U.S. at 292, 100 S.Ct. at 564. If the burdens of trial are too great for a plaintiff, the plaintiff can decide not to sue or, perhaps, to sue elsewhere. A defendant has no such luxury. The burdens on a defendant are of particular significance if, as here, the defendant has done little to reach out to the forum state.

### C. Conflict with Sovereignty of Defendant's State.

 The due process limitations on suits against non-residents have their roots largely in our constitutional federalism and the resultant sovereignty of states. *World-Wide Volkswagen, supra*, 444 U.S. at 293, 100 S.Ct. at 565. The purposeful interjection component of our analysis requires that a defendant must in some way step outside the exclusive protection of his own state and engage in activities touching another sovereignty. The reasonableness of jurisdiction under the third *Data Disc* condition depends also in part upon the seriousness of the potential affront to the sovereignty of a defendant's state.

 Thus, the analysis of reasonableness may take into account the nature of the sovereignty of a defendant's state. We do not minimize the sovereignty of the states within our federal system when we conclude that foreign nations present a higher sovereignty barrier than that between two states within our union. This is only a recognition of what is obvious. That the shipyard is in a foreign country is therefore a factor bearing negatively on the reasonableness of personal jurisdiction.

 A second factor bearing on the seriousness of the affront to sovereignty in the present case is the fact that the shipyard belongs to an agency of a foreign sovereign. We need not decide whether the shipyard has sovereign immunity. We do conclude that sovereign status of a defendant militates against the reasonableness of jurisdiction, at least in cases arising before the passage of the Foreign Sovereign Immunity Act of 1976[1] (FSIA). Because the present case preceded the FSIA, we need not decide whether that Act gives such clear notice to foreign countries as to remove, as a reasonableness factor, the expectations of immunity of agencies of foreign countries performing commercial functions.

### D. Interest of Forum State.

 In assessing reasonableness we must consider "the interests of the forum State and of the plaintiff in proceeding with the cause in plaintiff's forum of choice." *Kulko v. Superior Court, supra*, 436 U.S. at 92, 98 S.Ct. at 1696. Alaska has an interest in the protection of its non-resident fishing fleet from negligent foreign repairs. *See Data Disc, supra*, 557 F.2d at 1288. CBC and the insurance company no doubt chose the Alaskan forum instead of a Mexican forum for reasons of their own convenience and because of their greater familiarity with American law and procedure. Alaska would have a greater interest if CBC, its partners and employees had been Alaskan residents. Such residence would, presumably, also have increased the convenience preference of CBC and the insurance company for Alaska. We do not, however, intend to belittle the legitimacy or

---

1. Pub.L.No. 94–583, 90 Stat. 2891 (codified at 28 U.S.C. §§ 1330, 1602–11 and amending 28 U.S.C. §§ 1391, 1441).

significance of Alaska's interest or that of CBC and the insurance company in proceeding in Alaska in concluding that those interests are not so compelling as to outweigh the factors militating against jurisdiction. *See Kulko v. Superior Court, supra,* 436 U.S. at 92, 98–101, 98 S.Ct. at 1696, 1700.

### E. *Most Efficient Resolution.*

■ Judicial efficiency would seem to favor a Mexican forum. In a case involving complex factual questions about a major repair that required several weeks to complete and in which the repaired object probably cannot economically be recovered for inspection, the site of the repair will usually be the source of most of the witnesses, documents, and physical evidence on which the case will turn.

The district court in Alaska would be required to apply Alaskan choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). There is some reason for doubt whether a court applying Alaskan choice of law rules would select Alaskan or Mexican law. *See Armstrong v. Armstrong,* 441 P.2d 699, 703–04 (Alaska 1968) (rejecting strict application of lex loci delicti rule). If the district court were to conclude that Mexican law should apply, that would doubtless have an additional negative effect on the efficiency of proceedings in Alaska. *Cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (having trial in state whose law governs the case is a factor in *forum non conveniens* determination).

■ There is also some reason to doubt whether it would be possible to enforce a judgment of the district court against the shipyard. The Mexican ambassador has asserted sovereign immunity with respect to an American judgment as well as with respect to jurisdiction. This possibility bears on judicial efficiency conceived in terms of the effective resolution of the dispute. It may therefore be taken into account in assessing the reasonableness of jurisdiction.

### F. *Convenient and Effective Relief for Plaintiff.*

Consideration should also be given to "the plaintiff's interest in obtaining convenient and effective relief . . . ." *See World-Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct. at 564. Although the Alaska forum is more convenient for CBC and the insurance company, there is some question, as discussed above, whether effective relief could be secured in the district court. Certainly, CBC and the insurance company have not demonstrated the probability of collecting an Alaskan judgment.

This aspect of inquiry may also be less weighty if a plaintiff has the power to select a different forum. *Id.* Here again, CBC and the insurance company, as discussed below, have failed in their burden to demonstrate such a limitation.

### G. *Existence of an Alternative Forum.*

■ If a plaintiff wishes to argue the unavailability of an alternative forum as a factor increasing the reasonableness of jurisdiction in the forum, he must carry the burden of going forward on this issue. This is in line with the plaintiff's general burden on jurisdictional issues. *See KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 200, 81 L.Ed. 183 (1936); *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977).

■ In this case, there was no proof of foreign law on whether a Mexican forum is available. Therefore we need not reach the question whether the non-existence of a Mexican forum would affect the reasonableness of jurisdiction in Alaska.

### IV

■ None of these factors is necessarily decisive nor, we emphasize, are these factors a litany to be applied in each case. Determining reasonableness is not an abstract exercise but must be approached with flexibility and must focus on the circumstances of a given case. We conclude that there are seven relevant points of inquiry in this case and our decision as to reasonableness is made by considering the relative significance of each and balancing them all.

In summary, the shipyard's purposeful interjection into Alaska was at most minimal. The burden on the shipyard in defending the case in Alaska would be unusually high. The fact that the shipyard is in a foreign country and belongs to an agency of a foreign nation bears on the sovereignty concerns underlying limitations on jurisdiction and militates against the reasonableness of jurisdiction in this case. Considerations of judicial efficiency also bear negatively on the reasonableness of jurisdiction in Alaska. These negative factors are not outweighed by the interests of the forum or those of CBC and the insurance company in having the case tried in an Alaskan court. We conclude that it would not be reasonable for an Alaskan court to exercise jurisdiction over the shipyard and therefore that there is no jurisdiction under the *International Shoe—Data Disc* standard.[2]

REVERSED.

SCHROEDER, Circuit Judge, specially concurring:

There were no minimum contacts with Alaska as required by the Supreme Court's decision in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and as recently discussed in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The district court found that after plaintiffs brought the ship to the defendant for repairs in Mexico, the plaintiffs must have "mentioned" the eventual Alaskan destination of the ship to personnel of the defendant. There was no deliberate effort on the part of the defendant to serve an Alaskan market nor did the defendant make any use of a distributive scheme designed to place any goods or services in Alaska or any other part of the United States. *See DeJames v. Magnificence Carriers, Inc.*, 491 F.Supp. 1276 (D.N.J.1980)

holding there was no jurisdiction in New Jersey over a Japanese defendant which had done repair work allegedly responsible for injuries suffered in a New Jersey port. I therefore concur in the result reached by the majority.

---

**2.** We need not decide whether the FSIA applies retroactively to supply jurisdiction, because the FSIA's long arm section is subject to the same due process, minimum contacts, limitations as is Alaska's long arm statute. *Thos. P. Gonzales Corp. v. Consejo Nacional de Produccion*

