Lazaro PEREZ and Migdalia Perez, individually and as parents and natural guardians of Vladimir Perez, a minor, Appellants,

v.

THE BAHAMAS, a foreign state.

No. 80–1215.

United States Court of Appeals, District of Columbia Circuit.

Argued March 2, 1981.

Decided April 28, 1981.

Arnold R. Ginsberg, Washington, D. C., with whom James E. Burk, Washington, D. C., was on the brief, for appellants.

William A. Bradford, Jr., Washington, D. C., with whom Edward A. McDermott and Allan D. Windt, Washington, D. C., were on the brief, for appellee.

Before MacKINNON and WALD, Circuit Judges, and AUBREY E. ROBINSON, Jr., District Judge.*

AUBREY E. ROBINSON, Jr., District Judge:

This is an appeal from the District Court's, 482 F.Supp. 1208, dismissal of a

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

tort action against the Government of the Bahamas. The lower court held that it lacked subject matter and personal jurisdiction under 28 U.S.C. § 1330 (1976), which is predicated upon the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602–1611 (1976). The FSIA exception relied upon by Appellant is clearly inapplicable to this case. Accordingly, we affirm.

## I

Appellant Perez was a minor aboard a United States fishing vessel in the territorial waters of The Bahamas and was severely injured by a gunshot when Bahamian governmental gunboats fired on the fishing vessel. Suit was commenced against the Government of The Bahamas in the United States District Court for the Southern District of Florida for damages resulting from Appellant's injury. The case was transferred to the District Court for the District of Columbia pursuant to the special venue provision applicable to actions brought against a foreign state. *Id.* § 1391(f)(4). The District Court construed our statute to hold that The Bahamas was immune from suit since Appellant had failed to show how the facts of the case triggered any of the statutory exceptions to sovereign immunity. As a result, the District Court dismissed Appellant's complaint since it lacks subject matter or personal jurisdiction when a foreign sovereign is immune from suit. *Id.* § 1330.

The provision of the Foreign Sovereign Immunities Act principally at issue in this case provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state

for personal injury or death, or damage to or loss of property, *occurring in the United States* and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment;
. . .

28 U.S.C. § 1605(a)(5) (1976) (emphasis added). A related provision is the definitional section of the FSIA, which specifies that

[t]he 'United States' includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

*Id.* § 1603(c).

Appellant would have us hold that the shooting incident in this case occurred "in the United States" since, he argues, it occurred within the 200-mile wide Fishery Conservation Zone established by Congress in the Fishery Conservation and Management Act of 1976. 16 U.S.C. §§ 1801–1882 (1976). Alternatively, he argues that the shooting occurred within an area subject to the special maritime jurisdiction of the United States established for purposes of criminal law enforcement, 18 U.S.C. § 7 (1976), and thus occurred "in the United States."

## II

██ We need not reach the question of whether territory subject to the limited jurisdiction of the United States for circumscribed purposes of fishery conservation or of law enforcement is territory of the United States, sufficient to strip a foreign sovereign of its immunity from tort actions in United States Courts.[1] The shooting incident involved in this case occurred less than a half mile from an island of The Bahamas, the Great Isaac Cay, in Bahamian territori-

---

1. It is doubtful that territory falling within the Fishery Conservation Zone suffices as territory of the United States within the meaning of the FSIA. The Fishery Conservation Management Act explicitly provides that it was Congress' intent to "maintain without change the existing territorial or other ocean jurisdiction of the United States for *all purposes* other than the conservation and management of fishery resources." 16 U.S.C. § 1801(c)(1) (emphasis

added). The language of the statute makes it clear that it was the intent of Congress to extend United States jurisdiction beyond our territorial seas only for the purpose of conserving and managing scarce marine resources. *See United States v. Postal*, 589 F.2d 862, 880 n.30 (5th Cir. 1979); Note, *Fishery Conservation & Management Act of 1976: An Accommodation of State, Federal and International Interests* 10 J. Int'l Law 703, 735 (1978). In-

al waters. Even if Appellant's theories are accepted, the tort did not occur in the United States. The Bahamas is immune from suit in our courts for torts occurring outside the United States. *But see* 28 U.S.C. § 1605(a)(3).

The Secretary of State, pursuant to the authority given him by the Fishery Conservation Management Act, 16 U.S.C. § 1822 (1976), declared the limit of the Fishery Conservation Zone, insofar as The Bahamas is concerned, to be the median line halfway between the United States and The Bahamas. 42 Fed.Reg. 12937–38 (1977). It is undisputed that the events in this case took place well beyond the median line, in the territorial waters of The Bahamas and outside the Fishery Conservation Zone. This placement by the Secretary of State of the area in question beyond the United States Fishery Conservation Zone is dispositive of Appellant's principal contention. Appellant's argument that a tort committed in the Fishery Conservation Zone is a tort "occurring in the United States" is thus not supported by the facts of this case.

█ Perez also relies upon 18 U.S.C. § 7(1) but that statute defines the "special maritime and territorial jurisdiction of the United States" only for purpose of the title dealing with United States crimes. Also, the only waters subject to the United States' special maritime jurisdiction are "high seas", 18 U.S.C. § 7(1) (1976), and territorial waters of a nation are not part of the "high seas". *See, e. g.,* Convention on the High Seas, Article I, T.I.A.S., 13 U.S.T. 2312; *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 569 F.2d 330, 338 n.14 (5th Cir. 1978); *United States v. Mitchell,* 553 F.2d 996, 1005 n.15 (5th Cir. 1977). *Cf. United States v. Flores,* 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933) (acts committed by U.S. citizens on U.S. vessels in territorial waters of another

sovereign are subject to criminal jurisdiction of U.S. Courts). Appellant's injuries were not suffered on the high seas but, rather, were inflicted within Bahamian territorial waters. Therefore, the special maritime jurisdiction is in no way involved here and we need not reach the question of its applicability to jurisdictional determinations under the FSIA.

Appellant has failed to demonstrate how Section 1605(a)(5), or any of the statutory exceptions to sovereign immunity, are applicable to The Bahamas in this case. The Government of The Bahamas is entitled to the sovereign immunity granted it by statute, 28 U.S.C. § 1604 (1976), and the lower court was correct in dismissing this action.

---

deed, if the Fishery Conservation Zone is used as a device to obtain personal and subject matter jurisdiction over foreign sovereigns in civil suits unrelated to the purposes of the Fishery Act, international law may be violated. Publicist Ian Brownlie observed:

> Excessive and abusive assertion of civil jurisdiction could lead to international responsibility or protests at *ultra vires* acts.

Indeed, as civil jurisdiction is ultimately reinforced by procedures of enforcement involving criminal sanctions, there is in principle no great difference between the problems created by assertion of civil and criminal jurisdiction over aliens.

I. Brownlie, *Principles of Public International Law* 299 (1979).