**Erin Rayne OLSEN, a Minor by Patty SHELDON, Maternal Grandmother and Guardian ad Litem, Plaintiffs-Appellants,**

v.

**GOVERNMENT OF MEXICO, Defendant-Appellee.**

**Ursula Baines SANCHEZ, By and Through her Guardians ad Litem Joseph J. CERNIE and Sally Z. Cernie, Plaintiffs-Appellants,**

v.

**The REPUBLIC OF MEXICO, a Foreign Government, Defendant-Appellee.**

Nos. 83–5626, 83–5629.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1983.

Decided March 30, 1984.

As Amended July 16, 1984.

Donald S. White, Bonnie Pastor, Maupin, Cutler, Teplinsky & White, Los Angeles, Cal., for Olsen.

Mark S. Hennings, Shield & Smith, Los Angeles, Cal., for Sanchez.

Christopher J. Schatz, Ramon Castro, Jack Sleeth, Sheela, Lightner & Castro, San Diego, Cal., for defendant-appellee.

Before FLETCHER and NELSON, Circuit Judges, and HARDY,* District Judge.

NELSON, Circuit Judge:

Erin Olsen and Ursula Sanchez appeal from the dismissal of their wrongful death claims for lack of personal jurisdiction. The district court held that general contacts between the defendant and the forum state provided no basis for jurisdiction. Additionally, the court concluded that personal jurisdiction based on defendant's forum-related activities would be unreasonable and thus violative of due process requirements.

On appeal, the Government of Mexico ("Mexico") also challenges subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, 90 Stat. 2891–98, 28 U.S.C. §§ 1330, 1332(a)(2), (4), 1391(f), 1441(d), 1602–1611 (1980) [hereinafter cited as the FSIA].

We find that both subject matter jurisdiction and personal jurisdiction exist and therefore reverse.

FACTS

Appellants Olsen and Sanchez, United States citizens domiciled in California, are minor children claiming the wrongful death of their parents. As prisoners of the Mexican government, the parents of appellants were to be transferred to authorities for incarceration in the United States pursuant to the Prisoner Exchange Treaty between the United States and Mexico.

On the night of October 27, 1979, a twin-propeller plane owned and operated by the Mexican government carrying guards, pilots and appellants' parents departed Monterrey, Mexico for Tijuana, where the transfer was to take place. En route, the pilots, employees of the Mexican Department of Justice, learned of thick fog and diminishing visibility at their destination. They requested an instrument landing which, at Tijuana Airport, requires the airplane to enter United States airspace so it can approach the runway from the west. Following procedures established by a Letter of Agreement between aviation authorities of the United States and Mexico, Tijuana air control sought and received permission for the airplane to cross the border. In addition to providing access to United States airspace during hazardous weather conditions, the Letter also allows for coordinated navigational assistance.

Because its radar and instrument landing navigational system were inoperative, Tijuana air control asked its counterpart in San Diego to radio direction headings, altitude and location data necessary for an instrument landing to the aircraft. Unfor-

---

* Honorable Charles L. Hardy, United States District Judge for the District of Arizona, sitting by designation.

tunately, neither the San Diego air controllers nor the pilots were bilingual. Instead, the San Diego air controllers relayed the information via the telephone "hotline" to Tijuana air control which radioed a translation to the pilots.

In this manner, the aircraft penetrated almost 12 miles into United States airspace, made a wide turn and began to descend toward Tijuana Airport. Having strayed one mile off the proper course, the pilot abandoned the approach at the border and re-entered Mexican airspace.

San Diego air control advised the pilot to proceed to other airports where visual landings would be possible. The pilot declined and decided to attempt another instrument landing. With the continued use of navigational data from San Diego air control, the airplane re-entered United States airspace. The pilots aligned the aircraft with the proper compass heading and descended on course, but failed to maintain the proper altitude. After striking a telephone pole, the airplane crashed three-quarters of a mile inside the United States, killing all on board. The crash site was two and one-half miles from the beginning of the runway.

## DISCUSSION

The FSIA sets forth criteria which must be satisfied to establish both statutory subject matter jurisdiction and personal jurisdiction. The FSIA confers subject matter jurisdiction upon district courts in nonjury civil actions where the foreign state is not entitled to immunity as defined by the FSIA's substantive provisions, 28 U.S.C. § 1330(a) (1982). Personal jurisdiction is established whenever subject matter jurisdiction exists and service of process has been made in accord with section 1608 of the FSIA. 28 U.S.C. § 1330(b) (1982). Thus, both forms of jurisdiction turn on whether the foreign state is entitled to sovereign immunity. If the dispute does not come within one of the exceptions to sovereign immunity explicitly provided by sections

1605–1607, the district court lacks both subject matter jurisdiction and personal jurisdiction.

## I. Subject Matter Jurisdiction

■ As section 1330(a) indicates, sovereign immunity is not merely a defense under the FSIA. Its absence is a jurisdictional requirement. *See Verlinden, B. V. v. Central Bank of Nigeria,* —— U.S. ——, 103 S.Ct. 1962, 1971 n. 20, 76 L.Ed.2d 81 (1983) (*"Verlinden"*). We begin our inquiry, therefore, by considering whether Mexico is entitled to immunity.

The FSIA grants blanket immunity to foreign states, 28 U.S.C. § 1604, and then carves out specific exceptions to immunity in sections 1605 to 1607. Appellants allege that their wrongful death claims come within the so-called "noncommercial torts" exception, section 1605(a)(5), which provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

\*　　\*　　\*　　\*　　\*

(5) not otherwise encompassed in paragraph (2) above, [the commercial activity exception] in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment;

28 U.S.C. § 1605(a)(5) (1982).

Mexico argues that section 1605(a)(5) does not apply and it is therefore immune from suit. First, Mexico contends that Congress, in enacting the FSIA, adopted the restrictive theory of sovereign immunity and that Mexico's conduct was of the

public nature held to be immune under that theory. Second, Mexico asserts that the 1605(a)(5) exception to immunity requires all the acts or omissions constituting the tort to occur within the United States. Finally, Mexico characterizes its activities which led to the crash as discretionary functions, thus falling within the exception to jurisdiction set forth in section 1605(a)(5)(A). We consider these arguments in turn.

## A. The FSIA and the Restrictive Theory of Sovereign Immunity.

■ It is clear that the FSIA, for the most part, codifies the restrictive principle of sovereign immunity. *See Verlinden,* 103 S.Ct. at 1968. Under this principle, the immunity of a foreign state is "restricted" to suits involving that state's public acts (jure imperii) and does not extend to suits based on its private or commercial acts (jure gestionis). *McKeel v. Islamic Republic of Iran,* 722 F.2d 582, 587 n. 6 (9th Cir. 1983).

Mexico argues that this public/private distinction applies not only to the FSIA generally, but specifically to section 1605(a)(5), the noncommercial torts exception to immunity. According to Mexico's interpretation, foreign states would be immune from jurisdiction for those torts which otherwise come within the bounds of section 1605(a)(5) but which are public in nature.

■ Section 1605(a)(5) cannot be read, however, other than in conjunction with section 1605(a)(5)(A), which exempts from the reach of section 1605(a)(5) those torts committed in a foreign state's discretionary capacity. 28 U.S.C. § 1605(a)(5)(A) (1982).

Discretionary functions, as discussed below, include those acts or decisions made at the policy-making or planning level of government. Those torts involving acts or omissions of a fundamentally governmental nature are not actionable. Thus, despite section 1605(a)(5), a foreign state remains largely immunized from torts committed in its governmental capacity. Mexico's position, that governmental acts are automatically read out of section 1605(a)(5), would render section 1605(a)(5)(A) superfluous. Its argument is therefore untenable.

## B. The Location of the Tortious Conduct.

Section 1605(a)(5) requires the injury complained of to occur in the United States.[1] The provision does not indicate that the conduct causing the tort must also take place in the United States. Ordinarily, this would end our inquiry and there would be no need to consider the location of the tortious conduct. Where, as in the instant case, the injuries occurred in the United States, and all other requirements of section 1605(a)(5) are met, the foreign state would not be immune. However, the legislative history to section 1605(a)(5) indicates that "the tortious act or omission must occur within the jurisdiction of the United States...." *House Report* at 21, U.S.Code Cong. & Admin.News 1976, p. 6619.

A careful reading of the record in this case suggests that many potentially tortious acts and omissions occurring both in Mexico and the United States caused the crash. Pilot error, the absence of operational radar and navigational aids at Tijuana airport, defective aircraft instruments, the decision to forego a visual landing at another airport, inaccurate data from San

---

**1.** Section 1605(a)(5) specifies that foreign states are not immune from jurisdiction in any case in which money damages are sought "for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state . . ." 28 U.S.C. § 1605(a)(5) (1982).

Diego air control, and other factors may have contributed causally to the accident.

Mexico, relying on *Matter of SEDCO*, 543 F.Supp. 561, 567 (S.D.Tex.1982) (*SED-CO*), contends that section 1605(a)(5) must be construed to require all of the tortious conduct to occur in the United States before a foreign state will be denied immunity. In *SEDCO,* an exploratory off-shore well operated by Pemex, the Mexican national oil company, exploded in Mexican waters. The resulting oil slick washed up on the shores of Texas. Citizens there sued Pemex and other parties under section 1605(a)(5). Citing that section's legislative history requiring the tortious act or omission to occur within the United States, the court held that for the noncommercial tort exception to apply, "the tort, in whole, must occur in the United States." *SED-CO,* 543 F.Supp. at 567.[2] Thus, Mexico argues, because some allegedly tortious acts or omissions took place outside the United States—such as the maintenance of the aircraft and the inoperative radar at Tijuana airport—Mexico should be immune.

■ The instant case is distinguishable from *SEDCO* in one crucial respect. In *SEDCO, none* of the alleged acts or omissions, only the resultant injury, occurred in the United States.[3] By requiring every aspect of the tortious conduct to occur in the United States, a rule such as in *SEDCO* would encourage foreign states to allege that some tortious conduct occurred outside the United States. The foreign state would thus be able to establish immunity and diminish the rights of injured persons seeking recovery. Such a result contradicts the purpose of the FSIA, which is to

"serve the interests of justice and ... protect the rights of both foreign states and litigants in United States courts." 28 U.S.C. § 1602. The FSIA requires us to protect the rights of plaintiffs while respecting the sovereignty of foreign states. Consequently, we hold that if plaintiffs allege at least one entire tort occurring in the United States, they may claim under section 1605(a)(5). In this case, appellants allege conduct constituting a single tort—the negligent piloting of the aircraft—which occurred in the United States. We are satisfied that appellants have alleged sufficient conduct occurring in the United States to bring this case within the noncommercial torts exception as expressed in section 1605(a)(5) and its legislative history.

C. The Discretionary Function Exception.

Section 1605(a)(5)(A) provides an exception to noncommercial tort jurisdiction for claims based upon a state's discretionary function.[4] Mexico seeks to bring the airplane crash within this exception by contending that the conduct which led to the crash was discretionary.

The FSIA provides considerable guidance as to which acts or decisions constitute discretionary functions. Not only does the language of the FSIA discretionary function exception replicate that of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a), but the legislative history of the FSIA, in explaining section 1605(a)(5)(A), directs us to the FTCA. *House Report* at 21. To determine the scope of the discretionary function exception of the FSIA, we

---

2. *See also Perez v. The Bahamas,* 652 F.2d 186, 188–89 (D.C.Cir.), *cert. denied,* 454 U.S. 865, 102 S.Ct. 326, 70 L.Ed.2d 166 (1981). *Perez* is distinguishable from this case because both the tortious conduct and injury occurred outside the United States.

3. *See also Persinger v. Islamic Republic of Iran,* 729 F.2d 835 (D.C.Cir.1984) (distinguishable on same grounds).

4. Section 1605(a)(5) does not apply to:
(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether discretion be abused.
28 U.S.C. § 1605(a)(5)(A) (1982).

therefore turn to the interpretation given the similar FTCA provision.[5]

The seminal case defining the scope of the discretionary function exception within the context of the FTCA, *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), held "discretion" to mean:

> "more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion."

*Id.* at 35–36, 73 S.Ct. at 968. In so defining discretion, the Court adhered to the legislative purpose behind the exception: to allow government executives to make policy decisions in an atmosphere free of concern over possible litigation. *Id.* at 32, 73 S.Ct. at 966.

■ Over the years, the definition of discretion has been refined and qualified somewhat. *See Driscoll v. United States*, 525 F.2d 136, 138 (9th Cir.1975). This circuit employs a test which distinguishes between the "planning level" of governmental activity and those acts designed to carry out policy, the "operational level." *Thompson v. United States*, 592 F.2d 1104, 1111 (9th Cir.1979). Because decisions at the planning level establish governmental policy, they are not actionable. But where decisions occur at the operational level, the discretionary function exemption provides no protection from liability even though such decisions or acts may involve elements of discretion. *Lindgren v. United States*, 665 F.2d 978, 980 (9th Cir.1982); *see also Thompson*, 592 F.2d at 1111; *Driscoll*, 525

F.2d at 138. In addition to examining the level at which the conduct occurred, we also consider two other factors which are particularly important when determining the immunity of foreign states: The ability of United States courts to evaluate the act or omission of the state, and the potential impairing effect such an evaluation would have on the effective administration of the state's government. *Lindgren*, 665 F.2d at 980; *Driscoll*, 525 F.2d at 138.

■ We conclude that of those alleged acts or omissions on the part of Mexico which contributed to the accident, none was discretionary. First, while Mexico's decision to enter into the Prisoner Exchange Treaty with the United States or to transfer these particular prisoners to United States custody might well be deemed discretionary, those decisions are not implicated in the instant action. Rather, appellants allege that Mexico negligently maintained, directed and piloted the aircraft. Such conduct represents measures taken to implement the broader policy or plan to exchange prisoners. The acts or omissions in question involved the transportation of prisoners, an act remote from the policy decision to transfer them. While the pilot and air controllers had considerable discretion in carrying out their assigned tasks, *see Lindgren*, 665 F.2d at 980; *Thompson*, 592 F.2d at 1111; *Driscoll*, 525 F.2d at 138, it is clear they acted on the operational level, far from the centers of policy judgment. *See also Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227, 238 (2d Cir.1967) (air controller's failure to comply with regulations occurred at operational level); *United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 396 (9th Cir.1964); *Eastern Air Lines v. Union Trust Co.*, 221 F.2d 62, 78 (D.C.

**5.** The Federal Tort Claims Act does not apply to: (a) Any claim ... based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
28 U.S.C. § 2680(a) (1982).

Cir.1955) (control tower operators act at operational level).

Second, this dispute does not raise questions of policy decisions of Mexico, only issues of historical fact and tort liability. Therefore, the trial court can readily evaluate the allegedly tortious acts as it is well suited to the task of determining facts and applying the relevant law.

Third, we see nothing which suggests that denying immunity will impair the effectiveness of Mexico's penal or aviation authorities. A trial on the merits will call for the testimony of individuals involved in the accident, primarily Mexican air traffic control personnel. There seems little doubt that the air traffic authorities and other relevant governmental entities can function without diminished efficacy while their employees testify in discovery or court proceedings.

In conclusion, the claims asserted by appellants fall within the exception to immunity for noncommercial torts as provided by section 1605(a)(5) of the FSIA. Additionally, the conduct of Mexican personnel which may have led to the crash occurred at the operational level and was not discretionary. Thus, Mexico is not immune under the FSIA and subject matter jurisdiction exists.

II. Personal Jurisdiction

■ Personal jurisdiction over a foreign state exists in any case where the foreign state is not entitled to immunity under the FSIA and service has been made in accordance with the statute's requirements. 28 U.S.C. § 1330(b) (1982). There has been no assertion that service did not comply with the statute, but we must still consider whether the exercise of personal jurisdiction exceeds the constitutional limits imposed by the due process clause. Because California's long-arm statute extends the state's jurisdiction to the very limits of due process under the federal constitution, we examine personal jurisdiction in light of due process as defined by the United States Supreme Court. *Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1250 (9th Cir.1980), (quoting *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir.1974)), *cert. denied*, 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (1974). As stated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), due process requirements are met only if the defendant has sufficient minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158.

■ In our circuit, the defendant's contacts with the forum state are analyzed in two ways. If the non-resident defendant's activities within a state are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and forum to support jurisdiction even if the cause of action is unrelated to the defendant's forum-related activities. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446–48, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952); *Data Disc, Inc., v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977). If, however, the defendant's activities are not so pervasive as to subject the defendant to general jurisdiction, personal jurisdiction turns on the nature and quality of the defendant's contacts relating specifically to the cause of action. *Data Disc*, 557 F.2d at 1287. To find limited jurisdiction based on the defendant's forum-related activities, we require (1) the non-resident defendant to perform some act by which he purposefully avails himself of the benefits and protections of the forum's laws; (2) the plaintiff's claim to arise out of or result from the

defendant's forum-related activities, and; (3) the exercise of jurisdiction to be reasonable. *Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395, 397 (9th Cir.1983); *Data Disc,* 557 F.2d at 1287. Because we find sufficient contacts to justify limited jurisdiction, it is unnecessary to consider whether general jurisdiction exists.

■ The first two requirements of the *Data Disc* minimum contacts analysis are easily satisfied. In order to land during hazardous weather conditions, the pilot of the aircraft sought and received permission to enter United States airspace pursuant to procedures negotiated for precisely those circumstances. While receiving navigational assistance from San Diego air control, the pilot twice intentionally entered United States airspace. In so doing, Mexico purposefully availed itself of the benefits of operating its aircraft over California. In addition, the claims of appellants arise from the plane's flight and crash in California.

■ Jurisdiction is reasonable where "under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." *Taubler v. Giraud,* 655 F.2d 991, 993 (9th Cir.1981); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). While there is no mechanical or quantitative test for determining the reasonableness of jurisdiction, at least seven factors are relevant. *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir. 1981) [hereinafter cited as *I.N.A.*]. To determine reasonableness, we consider the relative significance of each factor and balance them all. *Id.* at 1273. We apply these factors below and conclude that personal jurisdiction over Mexico is reasonable.

A. Extent of Purposeful Interjection.

The extent of Mexico's purposeful interjection into California was substantial. The pilots intentionally entered United States airspace with the approval of Tijuana air control in order to make an instrument landing. While the decision to enter was made under exigent circumstances, the flight over California was neither accidental nor fortuitous. The pilot and Tijuana air control followed detailed procedures agreed to by Mexico and set forth in the Letter of Agreement in anticipation of weather conditions necessitating instrument landings. Furthermore, after the second missed approach, the pilot rejected a suggestion to land the aircraft at alternate airports in favor of another instrument approach over San Diego.

B. Burden of Defending.

While a primary concern in assessing the reasonableness of jurisdiction is the burden on the defendant, it is not dispositive and is to be considered in light of other relevant factors. *World-wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564; *Raffaele,* 707 F.2d at 398.

Undoubtedly, litigating abroad imposes significant inconveniences upon the party appearing in a foreign country. Transportation of witnesses, attorneys and physical evidence presents problems of logistics and expense, as does the need to translate testimony and documents. However, these inconveniences are minimized in the instant case. The physical evidence, including the wreckage and crash site, is located in San Diego. Other evidence, such as National Transportation Safety Board (NTSB) reports and the testimony of San Diego air traffic controllers and NTSB investigators, is in English and is available in San Diego as well. Additionally, advances in international transportation and communication facilities have diminished many of the burdens of litigating in a foreign nation. *See*

*Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958); *Raffaele,* 707 F.2d at 398. Important Mexican witnesses, such as the Tijuana air traffic controllers, are located just across the border and are readily accessible via modern transportation and communication links. Litigating the instant case in San Diego is far less burdensome to the defendant than much of the interstate litigation routinely pursued in the United States. Indeed, the burden on Mexico to defend in San Diego is as small as any foreign defendant may be expected to bear. *Compare Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 F.2d 1355, 1359 (9th Cir.1983); *Raffaele,* 707 F.2d at 398; *I.N.A.,* 649 F.2d at 1271–72.

### C. Conflict with Mexico's Sovereignty.

Mexico argues that its sovereignty raises a barrier to the reasonableness of jurisdiction. As was recognized in *I.N.A.,* the reasonableness of jurisdiction depends to some extent on the potential affront to the sovereignty of defendant's state. *I.N.A.,* 649 F.2d at 1272. While a defendant's sovereignty may weigh against allowing jurisdiction, that effect is minimal here. By denying immunity to foreign states defending certain claims, the FSIA reflects the modern realities of the interdependence of nations. Because personal jurisdiction turns on a determination of immunity, the FSIA represents Congress' decision that jurisdiction does not pose an affront to the sovereignty of the defending nation so serious as to preclude it. Thus, while we are respectful of Mexico's sovereignty, we find that in the present case it does not weigh heavily against the reasonableness of jurisdiction.

### D. Interests of Forum State.

California has strong interests in protecting its residents from injury and in furnishing a forum where their injuries may be remedied. *Raffaele,* 707 F.2d at 398. It has a special interest in exercising jurisdiction over those who have committed tortious acts within its boundaries. By subjecting the tortfeasor to liability for damages which are the proximate result of the tort, California acts to deter wrongful conduct affecting those within the state. *Data Disc,* 557 F.2d at 1288.

In addition, California also has an interest in ensuring that its citizens are fully compensated for their injuries. Such an interest is important both to ensure that injured individuals recover for their losses and to protect the state's economic resources from unnecessary expenditures. Finally, the forum state's interest in protecting the welfare of its minor residents is unquestionably important. *Kulko v. California Superior Court,* 436 U.S. 84, 98, 98 S.Ct. 1690, 1700, 56 L.Ed.2d 132 (1978).

### E. Most Efficient Resolution.

District court in San Diego would be the most efficient judicial forum. A court sitting in the district where the injury occurred and where the evidence is located ordinarily will be the most efficient forum. *Raffaele,* 707 F.2d at 399. As discussed above, San Diego will most likely be the richest source of physical evidence, witnesses and documents.

The district court is required to apply California's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). If Mexican law should apply, that would admittedly have a negative effect on the efficiency of proceeding in the United States. *I.N.A.,* 649 F.2d at 1273. However, we cannot tell from the briefs or record whether a true conflict of law exists. Mexico has not shown how its law conflicts with relevant California law or why its law should be applied. In any event, we are confident that a court in California can be trusted to apply properly the law of a for-

eign state. Thus, choice of law considerations are not a major impediment to the efficient resolution of this dispute.

F. Convenient and Effective Relief for Plaintiffs.

Undoubtedly, a California court affords appellants the most convenient and effective site for judicial relief. Not only is important evidence present in the United States, but concerns for appellants' personal comfort and convenience argue in favor of a United States forum. As this court observed in *Raffaele*, "Individual claimants 'would be at a severe disadvantage if they were forced to follow the ... [defendant] to a distant state in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof.'" *Raffaele*, 707 F.2d at 399 (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). Access to a California court is important to appellants for obtaining relief.

Finally, appellants' likelihood of enforcing a judgment against Mexico also bears on the effectiveness of a California court as a forum for resolving the dispute. *I.N.A.* 649 F.2d at 1273. Mexico is not immune to jurisdiction and thus enforcement of a judgment is not barred. Mexico has not shown how a judgment against it is unenforceable and thus we cannot conclude that such enforcement is so unlikely as to weigh against the reasonableness of jurisdiction.

G. Availability of an Alternate Forum.

Appellants recognize that Mexico affords an alternative forum but argue that it is, for practical purposes, unavailable. While the practicality of the alternative forum must be considered, *see Hedrick*, 715 F.2d at 1359; *Raffaele*, 707 F.2d at 399. Appellants must carry the burden of proving the unavailability of an alternative forum. *I.N.A.*, 649 F.2d at 1273. Appellants allude to a severe maximum limit on wrongful death recoveries, *see Hurtado v. Superior Court*, 11 Cal.3d 574, 578–79, 114 Cal.Rptr. 106, 108, 522 P.2d 666, 668 (1974), but offer no proof of applicable Mexican law to substantiate their allegation. Because appellants fail to carry their burden of proof, we cannot conclude that they are left without an alternative forum.

After considering all the relevant factors, we conclude that, on balance, it would be reasonable for a California court to exercise jurisdiction over Mexico and thus, personal jurisdiction is consistent with due process requirements.

REVERSED AND REMANDED.