**John D. McKEEL, Jr., et al.,**
**Plaintiffs-Appellants,**

v.

**The ISLAMIC REPUBLIC OF IRAN and the United States of America,**
**Defendants-Appellees.**

**Nos. 82–5111, 82–5114 to 82–5117 and 82–5417.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1982.

Submission Withdrawn Jan. 31, 1983.

Resubmitted Dec. 28, 1983.

Decided Dec. 30, 1983.

James H. Davis, Los Angeles, Cal., for plaintiffs-appellants.

Michael F. Hertz, Washington, D.C., for defendants-appellees.

Before SNEED and SKOPIL, Circuit Judges, and INGRAM *, District Judge.

* Honorable William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

SNEED, Circuit Judge:

On November 4, 1979, Iranian militants seized the diplomatic and military personnel attached to the United States Embassy in Tehran. The Americans were held hostage in violation of international law for over fourteen months. *See Case Concerning United States Diplomatic and Consular Staff in Tehran (U.S. v. Iran),* 1980 I.C.J. 3; *see also Dames & Moore v. Regan,* 453 U.S. 654, 662–66, 101 S.Ct. 2972, 2977–79, 69 L.Ed.2d 918 (1981) (discussing agreement between United States and Iran that led to release of the hostages).

This action was brought by twelve former hostages and by wives of two ex-hostages. Plaintiffs seek redress in tort against Iran for damages suffered during and as a result of their Iranian captivity, as well as declaratory relief against the United States. Plaintiffs base their allegation of subject matter jurisdiction over Iran on 28 U.S.C. §§ 1331 and 1332, and on the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330(a), and over the United States on 28 U.S.C. §§ 1331 and 1361.

The claims of thirteen of the plaintiffs were consolidated before Judge Gray of the District Court for the Central District of California, and Judge Hall of that district heard the fourteenth case. Both judges granted the motion of the United States, appellee here, to dismiss for lack of subject matter jurisdiction, and for failure to state a claim on which relief could be granted.[1]

We affirm the district court's dismissal of the actions for lack of subject matter jurisdiction.[2] In addition, we reject appellants' suggestion that we remand this case to determine whether the executive agreements negotiated by the President to obtain the hostages' release constitute a valid claim against the United States for a "taking" of property without just compensation, because the proper forum to adjudicate that issue is the United States Claims Court. Finally, we deny appellants' motion to transfer this case to that court.

I.

JURISDICTION OVER IRAN

Appellants assert federal question and diversity jurisdiction over the Islamic Republic of Iran, 28 U.S.C. §§ 1331 and 1332, as well as jurisdiction derived from the Foreign Sovereign Immunities Act, *id.* § 1330(a). We hold that there is no basis under sections 1331 and 1332 or the FSIA for jurisdiction over Iran.

A. *Federal Question and Diversity Jurisdiction*

■ Congress has the power through the Arising Under and Diversity Clauses of Article III of the Constitution to confer jurisdiction on the federal courts to hear suits such as the present one, where United States citizens seek redress against a foreign state defendant. *Verlinden B.V. v. Central Bank of Nigeria,* —— U.S. ——, 103 S.Ct. 1962, 1970 n. 18, 1973, 76 L.Ed.2d 81 (1983). However, it has not done so by enacting 28 U.S.C. §§ 1331 and 1332. These sections do not provide a basis for jurisdiction over Iran. Congress has vested

---

1. Defendant, the Islamic Republic of Iran, was represented in the district court by counsel, but did not defend the action, leaving that task to the United States.

2. *Persinger v. Islamic Republic of Iran,* No. 81–2003 (D.C.Cir., Oct. 8, 1982), involves issues similar to those presented here. In *Persinger,* the Court of Appeals for the District of Columbia held that the FSIA gave the district court jurisdiction for a suit by an ex-hostage against Iran for torts committed during the seizure of the United States embassy. The court further held that the suit was precluded by the executive agreements negotiated by President Carter to secure the release of the hostages. *Williams v. Iran,* 692 F.2d 151 (D.C.Cir.1982) and *Lauterbach v. Iran,* 692 F.2d 150 (D.C.Cir.1982) followed the original decision in *Persinger.*

The Court of Appeals for the District of Columbia subsequently withdrew its opinion in *Persinger* and granted the motion of the United States for a rehearing on the jurisdictional issue. Two cases against the United States by former hostages seeking compensation for preclusion of their claims against Iran are pending in the United States Claims Court. *Cooke v. United States,* No. 581–82C; *Amburn v. United States,* No. 564–82C.

exclusive jurisdiction over suits against foreign state defendants in the FSIA.

### 1. Section 1331

█ Although section 1331 grants district courts federal question jurisdiction over all cases "arising under" federal law, *cf. Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 739, 6 L.Ed. 204 (1824), the scope of this *statutory* "arising under" jurisdiction is limited by the well-pleaded complaint rule. This rule provides that a case arises under federal law for the purposes of section 1331 if the federal law issue must be presented as a matter of sound pleading in the complaint. *See Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). It is not satisfied when the federal question is merely an assertion "that federal law deprives the defendant of a defense he may raise ..., or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California,* —— U.S. ——, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983).

█ The federal question presented by appellants here is such an assertion. Appellants assert that the FSIA waives Iran's immunity from suit. The FSIA, however, does not affect the substantive law of liability. *See First National City Bank v. Banco Para el Comercio Exterior de Cuba,* —— U.S. ——, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983). That liability—were a court to reach the merits of appellants' claims—

would be determined by state or Iranian law. It follows that the appellants' allegation that the FSIA deprives Iran of a sovereign immunity defense to this action does not constitute a well-pleaded complaint under section 1331, *Franchise Tax Board,* 103 S.Ct. at 2846–47, and therefore does not provide a basis for statutory "arising under" jurisdiction.[3] *Cf. Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872, 876 (2d Cir.1981); *Hanoch Tel-Oren v. Libyan Arab Republic,* 517 F.Supp. 542, 545–48 (D.D.C.1981).

### 2. Section 1332

█ Section 1332(a)(2) presently gives the district courts jurisdiction over civil actions between "citizens of a State and citizens or subjects of a foreign state." Before the adoption of the FSIA, section 1332(a)(2) also extended district court jurisdiction to suits between "citizens of a State and foreign states." 62 Stat. 869, 930 (1948). However, Congress, as part of the FSIA, removed this jurisdiction from section 1332, and placed it in a new section, 1330.[4] H.R. Rep. No. 1487, 94th Cong., 2d Sess. 14, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6613. Moreover, the legislative history of the FSIA notes that section 1330 was enacted to promote "uniformity in decision," *id.* at 13, 1976 U.S.Code Cong. & Ad.News at 6611, and implies that jurisdiction over foreign states and their instrumentalities as defendants can only be obtained under the FSIA. Indeed, every appellate court to address the issue has so

---

**3.** Appellants also seek a declaratory judgment that they are not barred by several executive agreements from suing Iran for the injuries they suffered while being held hostage. This too is an assertion that federal law deprives the defendant of a defense, and thus does not meet the requirements of the well-pleaded complaint rule. *See Franchise Tax Board,* 103 S.Ct. at 2846–47.

*Shaw v. Delta Airlines, Inc.,* —— U.S. ——, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) does not govern the jurisdictional issue in this case. The Court held in *Shaw* that a plaintiff who seeks to enjoin state action based on a claim of federal preemption satisfies the well-pleaded complaint rule. *Id.* 103 S.Ct. at 2899 n. 14. This holding recognizes the long-standing rule

that federal courts have jurisdiction to enjoin state officials from interfering with federal rights. *Id.* (citing *Ex Parte Young,* 209 U.S. 123, 160–62, 28 S.Ct. 441, 454–55, 52 L.Ed. 714 (1908)). *Shaw,* however, does not suggest that the well-pleaded complaint rule is satisfied by a claim that federal law deprives the defendant of a possible defense. *Cf. Franchise Tax Board,* 103 S.Ct. at 2851–53 (no federal jurisdiction over suit by state seeking declaration that state action is not preempted by federal law).

**4.** There is still § 1332 jurisdiction over diversity suits involving foreign state plaintiffs. 28 U.S.C. § 1332(a)(4).

held. *See Goar v. Compania Peruana de Vapores,* 688 F.2d 417, 420–22 (5th Cir. 1982); *Rex v. Compania Pervana de Vapores,* 660 F.2d 61, 65 (3d Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Williams v. Shipping Corp. of India,* 653 F.2d 875, 880–81 (4th Cir.1981), *cert. denied,* 445 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982); *Ruggiero,* 639 F.2d at 875–76; *see also Verlinden B.V. v. Central Bank of Nigeria,* 103 S.Ct. at 1971, 1973 (dictum). We agree, and hold that section 1332 no longer provides for district court jurisdiction over a foreign state defendant, and that if appellants are to obtain jurisdiction in this case over Iran, it must be through the FSIA. *See Goar,* 688 F.2d at 420–22.

B. *Foreign Sovereign Immunities Act Jurisdiction*

28 U.S.C. § 1330(a) states that district court jurisdiction over claims against foreign state defendants is limited to cases in "which the foreign state is not entitled to immunity either under sections 1605–1607 of ... title [28] or under any applicable international agreement." The district court examined the relevant passages of the FSIA, and found that sovereign immunity barred suit against Iran. We affirm.

Under the FSIA, sovereign immunity is waived in suits "for money damages ... against a foreign state for personal injury or death, or damage to or loss of property, *occurring in the United States* and caused by the tortious act or omission of that foreign state ...." 28 U.S.C. § 1605(a)(5) (emphasis added). 28 U.S.C. § 1603(c) defines "the United States" for purposes of the FSIA to include "all territory and waters, continental or insular, subject to the jurisdiction of the United States."

This brings us to the heart of this case. Appellants argue that section 1603(c) should be interpreted to embrace "all territory and waters" with respect to which the United States exercises any form of jurisdiction. Inasmuch as United States embassies are subject to the jurisdiction of the United States for certain purposes, appellants argue that events occurring at the embassies fall within the waiver of immunity contained in section 1605(a)(5). Although a literal reading of the statute supports this argument, we decline to accept it because we believe the intent of Congress was to the contrary. *Cf. United States v. American Trucking Ass'ns,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940); *Trailer Train Co. v. State Board of Equalization,* 697 F.2d 860, 866 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983).

Our view rests on the proposition that Congress intended that the FSIA would make United States law on sovereign immunity consistent with international law. *See Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 310 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); H.R. Rep. No. 1487, *supra,* at 7, 1976 U.S.Code Cong. & Ad.News at 6605–06.[5] Consistent with that intent section 1604 provides a general jurisdictional immunity for foreign states which is made subject to the exceptions specified in section 1605.[6] Section 1605(a)(5), the exception for noncommercial torts on which appellants rely, is directed primarily at the problem of traffic accidents in the United States caused by automobiles operated by a foreign embassy. The legislative history makes this clear.

---

**5.** *See also* S.Rep. No. 1310, 94th Cong., 2d Sess. 9, 11 (1976); 122 Cong.Rec. 33532 (1976) (statement of Rep. Danielson); *Jurisdiction of U.S. Courts in Suits Against Foreign States: Hearings Before the Subcomm. on Administrative Law and Governmental Relations of the House Comm. on the Judiciary,* 94th Cong., 2d Sess. 29 (remarks of Bruno Ristau, U.S. Dep't of Justice); *id.* at 33 (remarks of Monroe Leigh, U.S. Dep't of State).

**6.** The FSIA codifies the "restrictive" principle of sovereign immunity as recognized in international law. Under this principle, the immunity of a foreign state is "restricted" to suits involving a foreign state's public acts (jure imperii) and does not extend to suits based on its commercial or private acts (jure gestionis). H.R. Rep. No. 1487, *supra,* at 7, 1976 U.S.Code Cong. & Ad.News at 6605–06.

*See* H.R.Rep. No. 1487, *supra,* at 7, 20–21, 1976 U.S.Code Cong. & Ad.News at 6605–06, 6618–20. Admittedly section 1605(a)(5) is cast in general terms and, with certain exceptions, includes all tort actions for money damages not encompassed by the commercial activity exception in section 1605(a)(2). *See* H.R.Rep. No. 1487, *supra,* at 20–21, 1976 U.S.Code Cong. & Ad.News at 6619. However, nothing in the legislative history suggests that Congress intended to assert jurisdiction over foreign states for events occurring wholly within their own territory. Such an intent would not be consistent with the prevailing practice in international law. That practice is that a state loses its sovereign immunity for tortious acts only where they occur in the territory of the forum state. *See, e.g.,* European Convention on State Immunity, Arts. 7, 11, Council of Europe, No. 74 (1972); State Immunity Act, 1979, pt. 2, § 7 (Singapore); State Immunity Act, 1978, ch. 33, § 5 (U.K.).

 Informed as we must be by that practice the issue before us is whether the embassy in Tehran is "territory . . . subject to the jurisdiction of the United States." Appellants contend that it is. Territory, of course, is a primary basis for jurisdiction, *i.e.,* a state may prescribe and enforce a rule of law for conduct occurring in territory under the state's sovereignty. Restatement (Second) of the Foreign Relations Law of the United States §§ 10, 17, 20 (1965) [hereinafter cited as Restatement (Second) ].[7] A United States embassy, however, remains the territory of the receiving state, and does not constitute territory of the United States. Restatement (Second) § 77 comment a. Thus, United States embassies are not within the territorial jurisdiction of the United States. *See Meredith v. United States,* 330 F.2d 9, 10–11 (9th Cir.), *cert. denied,* 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964).

 This is sufficient to dispose of appellants' contention. They argue, however, that United States embassies are "territory" subject to the jurisdiction of the United States on other grounds. Two such grounds are nationality and the protective principle. A state, for example, may punish the wrongful conduct of its citizens, no matter where it takes place. *E.g., Skiriotes v. Florida,* 313 U.S. 69, 73, 61 S.Ct. 924, 927, 85 L.Ed. 1193 (1941); Restatement (Second) § 30. The protective principle, on the other hand, provides that certain crimes against the sovereignty of a state may be punished regardless of the nationality of the actor or the location of the act. *E.g., United States v. Columbia-Colella,* 604 F.2d 356, 358 (5th Cir.1979) (dictum); *Rocha v. United States,* 288 F.2d 545 (9th Cir.1961), Restatement (Second) § 33. Nationality and the protective principle do allow the United States to assert jurisdiction over *individuals* for events occurring at United States embassies and consulates. *E.g., Agee v. Muskie,* 629 F.2d 80, 111 (D.C.Cir.) (United States embassy is under concurrent jurisdiction of United States criminal laws), *rev'd on other grounds sub nom. Haig v. Agee,* 453 U.S. 280, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1980); *United States v. Erdos,* 474 F.2d 157, 159–60 (4th Cir.) (same), *cert. denied,* 414 U.S. 876, 94 S.Ct. 42, 38 L.Ed.2d 122 (1973); *Rocha,* 288 F.2d at 548–49.

Appellants claim that *United States v. Erdos* establishes that embassies are subject to the jurisdiction of the United States for purposes of the FSIA with the result that jurisdiction exists for their suit against the *nation* of Iran. We disagree. In *Erdos,* a United States diplomat killed a fellow citizen within a United States embassy. 474 F.2d at 159. Jurisdiction for the prosecution of Erdos upon his return to the United States was based on 18 U.S.C. § 7, which grants special territorial jurisdiction over federal crimes committed in United States

---

**7.** The doctrine of sovereign immunity has been explained as an implied waiver by the domestic state of its exercise of territorial jurisdiction in regard to a foreign sovereign. *The Schooner Exchange v. M'Faddon,* 11 U.S. (7 Cranch) 116, 137, 147, 3 L.Ed. 287 (1812). *See generally* Von Mehren *The Foreign Sovereign Immunities Act of 1976,* 17 Colum.J. Transnat'l L. 33 (1978) (discussing background of FSIA).

embassies.[8] 474 F.2d at 159–60. *Erdos* is not controlling because it involved the exercise of jurisdiction over a United States citizen pursuant to an explicit statutory mandate. In contrast, here we are urged to assert jurisdiction over a foreign sovereign for events occurring within its own territory.[9] Moreover, the definition of jurisdiction under 18 U.S.C. § 7 is only for purpose of the title dealing with federal crimes, *see Perez v. The Bahamas*, 652 F.2d 186, 189 (D.C.Cir.), *cert. denied*, 454 U.S. 865, 102 S.Ct. 326, 70 L.Ed.2d 166 (1981), and it therefore does not determine whether United States embassies are subject to the jurisdiction of the United States within the meaning of the FSIA.

To interpret section 1603(c) as urged by appellants would represent a fundamental change in the prevailing international practice with respect to sovereign immunity. Under that practice assertions of jurisdiction based on nationality or the protective principle are not limited by the extent of a state's territory. If these bases of jurisdiction extended the "United States," as that term is used in section 1603(c), to any place at which they possibly could support jurisdiction, the FSIA would have almost unlimited geographic scope. Such an unprecedented assertion of jurisdiction against *foreign states* could interfere with the conduct of our foreign policy and impair relations between the United States and other governments. For example, were we to uphold jurisdiction here, and a Greek mail truck were to injure an American serviceman on a United States Army base in Greece, the American could sue the Greek government in the United States. Moreover, under the principle of reciprocity, *see* 6 M. Whiteman, *Digest of International Law* 580–82 (1968), the United States could become subject to foreign jurisdiction for torts committed by its agents and employees at foreign embassies in the United States.

 We conclude that the phrase "territory . . . subject to the jurisdiction of the United States" refers to areas subject to the territorial jurisdiction of the United States. The general rule is that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Foley Bros. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949); *see also Meredith*, 330 F.2d at 11. Because United States embassies are not subject to the territorial jurisdiction of the United States, the district court correctly held that the FSIA does not provide jurisdiction over Iran in this case.[10]

---

**8.** 18 U.S.C. § 7 provides in pertinent part:

The term "special maritime and territorial jurisdiction of the United States," as used in this title, includes:

(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

. . . . .

**9.** We also believe that *United States v. Pizzarusso*, 388 F.2d 8 (2d Cir.), *cert. denied*, 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968) is distinguishable from the present case. In *Pizzarusso*, a Canadian citizen who knowingly made a false oath at an American consulate was arrested upon entry into the United States and prosecuted. The power of the United States to proscribe conduct occuring at the consulate in Canada derived from the protective principle. *See id.* at 9–10. We do not think this case suggests that the FSIA provides jurisdiction over a foreign state for events occurring in that state's own territory.

**10.** The claims of family members fare no better than the claims of the hostages themselves. The FSIA merges the questions of subject matter and personal jurisdiction. 28 U.S.C. § 1330(a) provides statutory subject matter jurisdiction against a foreign state for nonjury civil actions in which the foreign state is not entitled to immunity under §§ 1603–07. 28 U.S.C. § 1330(b) provides that personal jurisdiction is satisfied if the court has subject matter jurisdiction under § 1330(a) and there has been service of process pursuant to § 1608.

Congress intended that the immunity provisions which establish subject matter jurisdiction would also prescribe the necessary contacts that must exist for courts to exercise personal jurisdiction. H.R.Rep. No. 1487, *supra*, at 13, 1976 U.S.Code Cong. & Ad.News at 6612. Consequently, in defining the contours

**590**

## II.

### TAKING CLAIM

■ Appellants argue that if we affirm the dismissal of their claims on the merits—as we have done—we should remand this case to the district court to determine whether the Claims Settlement Agreement gives rise to a valid claim against the United States for a taking of property without just compensation. We are unable to remand this case, however, because the district court lacks jurisdiction to hear appellants' taking claim.

There is district court jurisdiction for civil actions against the United States, such as a taking claim, only if the damages sought do not exceed $10,000. 28 U.S.C. § 1346(a)(2). Because appellants contend that each claim against Iran amounts to at least $5,000,000, E.R. at 32–33, jurisdiction would not lie with the district court, but with the United States Claims Court, 28 U.S.C. § 1491. *See Dames & Moore,* 453 U.S. at 689–90, 101 S.Ct. at 2991–92.

Appellants seek to avoid this conclusion by arguing that they are not seeking damages because of a taking, but only a declaratory judgment that the Claims Settlement Agreement is invalid because it took appellants' property rights. Thus, appellants contend, the district courts should have had jurisdiction under 28 U.S.C. §§ 1331 and 2201 to award the requested relief. Appellants' argument is without merit.

■ First, appellants are mistaken in their assumption that acceptance of their taking claim would invalidate Executive Order 12283. A federal court may not invalidate a governmental action under the Taking Clause if at the time of the alleged taking, there was a "reasonable, certain and adequate provision for obtaining compensation." *Cherokee Nation v. Southern Kansas Ry.,* 135 U.S. 641, 659, 10 S.Ct. 965, 971, 34 L.Ed. 295 (1890); *see Dames & Moore,* 453 U.S. at 689, 101 S.Ct. at 2991. That little or no compensation to the hostages from Congress has actually been forthcoming is irrelevant, since the availability of redress in the Claims Court satisfies the constitutional requirement of an adequate provision for compensation. *See Regional Rail Reorganization Act Cases,* 419 U.S. 102, 122–36, 95 S.Ct. 335, 348–55, 42 L.Ed.2d 320 (1974).

Second, the Claims Court's jurisdiction cannot be avoided by a complaint that appears to seek only equitable relief when the real effort of the complaining party is to obtain damages in excess of $10,000 from the federal government. *Laguna Hermosa Corp. v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1981). That is the object of the appellants. The only value to appellants of the declaratory judgment they seek would be to

---

of § 1605(a)(5), we are sensitive to the constitutional requirement that minimum contacts must exist for the assertion of jurisdiction against a foreign sovereign. *See Maritime International Nominees Establishment v. Republic of Guinea,* 693 F.2d 1094, 1105 & n. 18, 1108 & n. 20 (D.C.Cir.1982) (although immunity and personal jurisdiction are separate determinations, considerations related to personal jurisdiction are relevant to defining scope of immunity under § 1605(a)(2)), *cert. denied,* —— U.S. ——, 104 S.Ct. 71, 78 L.Ed.2d 84 (1983).

Congress patterned § 1330(b) on the long-arm statute for the District of Columbia. H.R. Rep. No. 1487, *supra,* at 13, 1976 U.S.Code Cong. & Ad.News at 6612. That statute does not authorize jurisdiction when the only contact with the forum is an injurious consequence of an out-of-state act or omission. *See, e.g., Harris v. VAO Intourist Moscow,* 481 F.Supp. 1056, 1061–65 (E.D.N.Y.1979); *Upton v. Empire of Iran,* 459 F.Supp. 264, 265–66 (D.D.C.

1978), *aff'd mem.,* 607 F.2d 494 (D.C.Cir.1979). We conclude that the FSIA does not provide jurisdiction over the claims of the family members in this case.

We need not decide whether § 1605(a)(5) may ever provide jurisdiction for tort actions in which the tortious act or omission occurs outside the United States. The language of § 1605(a)(5) suggests that only the injury need occur in the United States, but the legislative history declares that, "the tortious act or omission must occur within the jurisdiction of the United States." H.R.Rep. No. 1487, *supra,* at 21, 1976 U.S.Code Cong. & Ad.News at 6619. Judicial decisions reflect similar disagreement. *Compare Frolova v. Union of Soviet Socialist Republics,* 558 F.Supp. 358, 362 (N.D.Ill.1983) (act or omission must occur in the United States) *and In re Sedco, Inc.,* 543 F.Supp. 561, 567 (S.D.Tex.1982) *with Letelier v. Republic of Chile,* 488 F.Supp. 665, 674 (D.D.C.1980) (only tortious injury need occur in the United States).

have it serve as res judicata in the Claims Court.

Finally, the Claims Court does have the authority to issue a declaratory judgment where, as in the present case, declaratory relief is tied and subordinate to a monetary award. *See Rowe v. United States,* 633 F.2d 799, 802 (9th Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). Thus the Claims Court is the proper forum to award appellants relief for any taking of their property rights.

### III.

### TRANSFER TO CLAIMS COURT

Appellants have requested us to transfer their taking claim to the United States Claims Court. While we probably have the authority to make such a transfer under 28 U.S.C. § 1631, *see Hempstead County and Nevada County Project v. United States Environmental Protection Agency,* 700 F.2d 459, 462–63 (8th Cir.1983), we decline to do so here.

Section 1631 provides that a transfer of an action or appeal shall be made "to any such court in which the action or appeal could have been brought at the time it was filed" if the transfer "is in the interest of justice." *See Campbell v. Office of Personal Management,* 694 F.2d 305, 309 n. 6 (3d Cir.1982). As we note above, this case could not originally have been brought in the Claims Court, since appellants only seek declaratory relief, and do not plead money damages against the United States. Moreover, a transfer is not necessary to advance the interest of justice. The statute of limitations on appellants' taking claim has not yet run. 28 U.S.C. § 2501. Appellants therefore can refile in the United States Claims Court without penalty, should they choose to do so.

AFFIRMED.