**Raymond LEDGERWOOD, et al., Plaintiffs,**

v.

**STATE OF IRAN, et al., Defendants.**

**Civ. A. No. 81–0554.**

United States District Court, District of Columbia.

June 27, 1985.

John P. Coale, Washington, D.C., for plaintiffs.

Christine Nettesheim and Theodore C. Hirt, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The plaintiffs, Raymond and Colleen Ledgerwood, filed this action on March 9, 1981. The plaintiffs seek redress in tort for alleged personal injuries and deprivation of civil rights arising out of a February 14, 1979 seizure by Iranian militants of the United States Embassy in Tehran, Iran. Alleging that from February 14, 1979 through February 15, 1979 the state of Iran and ten unidentified "John Doe" defendants unjustly imprisoned and assaulted Raymond Ledgerwood, the plaintiffs now seek fifteen million dollars in damages.

The matter is now before the Court *sua sponte* to determine whether this court has jurisdiction over the defendants, and if so, whether the Court should exercise jurisdiction. The plaintiffs filed a motion for entry of a default judgment against Iran. In response, the Department of Justice filed a Statement of Interest on behalf of the United States asserting that the action is barred by both the provisions of the Foreign Sovereign Immunities Act (FSIA) of 1976, 28 U.S.C.A. §§ 1330, 1602 *et seq.* (1976) and Executive Order 12283, 46 Fed. Reg. 7927 (January 23, 1981), along with its implementing Treasury regulations. In a special appearance, counsel for the defendants filed a Statement asserting that paragraph eleven of the Declaration of the Democratic and Popular Republic of Algeria, 20 Int'l L. Materials 224, 227 (1981) obligates the United States to bar this lawsuit.

FLAG, Inc., a non profit organization, filed a brief *amicus curiae*, urging that jurisdiction would lie in the instant action, as the sovereign immunity of the government of Iran would be waived by virtue of 28 U.S.C. § 1605(a)(5). The plaintiffs advance a similar argument that because the action falls within the section 1605(a)(5) FSIA exception for certain non-

commercial acts,[1] Iran is not entitled to immunity. After careful consideration of the record, the arguments, and the applicable law, the Court concludes that the Foreign Sovereign Immunities Act precludes maintenance of this tort action against Iran.

 It is well established law that "an action brought in the United States against a foreign sovereign faces two potential obstacles—the Foreign Sovereign Immunities Act and the 'act of state' doctrine."[2] *Frolova v. Union of Soviet Socialist Republics*, 558 F.Supp. 358, 360 (N.D.Ill.1983). The Foreign Sovereign Immunities Act (FSIA) of 1976, sets forth the sole and exclusive standards for consideration in resolving questions of sovereign immunity raised by foreign states before federal or state courts in the United States. 28 U.S.C. §§ 1602 *et seq.;* Annot. 25 A.L.R.3d 20 (Supp.1984). Under the FSIA, foreign states are generally immune from the jurisdiction of federal and state courts. *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 838 (D.C.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984); (citing *The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 136, 3 L.Ed. 287 (1812)). The FSIA expressly deprives a court of jurisdiction over any party entitled to sovereign immunity. *Persinger*, 729 F.2d at 838.

The FSIA does, however, create certain exceptions where the sovereign nation loses its immunity:

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States *except as provided in sections 1605* to *1607 of this chapter.*

28 U.S.C. § 1604 (emphasis added).

 If one of the specified exemptions to sovereign immunity applies, a federal district court may exercise jurisdiction under § 1330(a); but if the claim does not fall within one of the exceptions, federal courts lack subject matter jurisdiction. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486, 103 S.Ct. 1962, 1969, 76 L.Ed.2d 81 (1983).

Section 1605(a)(5) creates one such exception for certain noncommercial (or tortious actions) as follows:

A foreign state shall not be immune from the jurisdictions of courts of the United States in any case ... in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious acts or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office, or employment; except this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

*Id.* (emphasis added). The legislative history of section 1605 clearly establishes that "the tortious act or omission must occur within the jurisdiction of the United States

---

**1.** Section 1605(a)(5) is also referred to as "the tortious act exception."

**2.** The "act of state" doctrine is not jurisdictional, rather it is a prudential doctrine designed to avoid judicial action in sensitive areas. *International Association of Machinists and Aerospace Workers v. OPEC*, 649 F.2d 1354, 1359 (9th Cir. 1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). The act of state doctrine declares that a United States court will not adjudicate a politically sensitive dispute which

would require the court to adjudge the legality of the sovereign act of a foreign state. *Id.* at 1358. Under the doctrine, a United States court cannot entertain any action that calls into question the validity of conduct or policies of a foreign government acting within its sovereignty, and the degree of foreign government entanglement which must be present to invoke the doctrine varies with the circumstances of each individual case. *Id.*

..." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 21, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6619. 28 U.S.C. § 1603(c) defines "United States" to include "all territory and waters, continental or insular, subject to the jurisdiction of the United States".

Resolution of the immunity issue in the instant action therefore, turns upon whether or not the acts complained of occurred within the jurisdiction of the United States. The events in question occurred in the United States Embassy in Tehran, Iran. The plaintiffs would have the Court read the language "occurring in the United States" as encompassing acts occurring in United States embassies abroad. However, a review of the legislative history of the Act and the relevant case law reveals that United States embassy grounds abroad are not subject to the jurisdiction of the United States for purposes of the FSIA.

This circuit and the ninth circuit have recently addressed the jurisdictional issue and congressional intent regarding the scope of section 1605(a)(5). *Persinger v. Islamic Republic of Iran,* 729 F.2d 835 (D.C.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 247, 83 L.Ed.2d 81 (1984) involved a virtually identical fact situation. In *Persinger,* a former hostage and his parents brought an action against Iran for injuries inflicted in the seizure and detention of American hostages at the United States Embassy in Tehran. One issue before the court was "whether Congress, in enacting the FSIA intended its jurisdiction to give courts in this country competence to hear suits against foreign states for torts committed on United States embassy premises abroad." *Id.* at 839. Concluding that "a state loses its sovereign immunity for tortious acts only where they occur in the territory of the forum state," the court dismissed the action for lack of jurisdiction. The court found itself persuaded by the language of the statute, its legislative history, and the consequences of adopting a contrary position, that "section 1605(a)(5) was not intended to abrogate the immunity generally enjoyed by a foreign sovereign

for tortious acts at embassies within its own territory." *Id.* at 842.

The court added that the series of unhappy consequences that would follow, if section 1603(c) were read broadly to cover areas in which the United States had jurisdiction, constituted yet another reason for finding the existence of sovereign immunity in this context. These consequences might entail not only serious inconvenience and injustice, but also embarrassment to our foreign relations. *Id.* at 841. For example,

> [f]oreign states might hesitate in providing services to U.S. embassies or consulates, were they to be subject to suit in U.S. courts for negligent acts or omissions on those premises ... if Congress had meant to remove sovereign immunity for governments acting on their own territory, with all the potential for international discord and for foreign government retaliation that that involves, it is hardly likely that Congress would have ignored these topics and discussed instead automobile accidents occurring in this country.

*Id.*

Similarly, *Williams v. Iran,* 692 F.2d 151 (D.C.Cir.1982) and *Lauterbach v. Iran,* 692 F.2d 150 (D.C.Cir.1982), two actions brought by former hostages held in the United States Embassy in Iran, also support the argument set forth in the government's Statement of Interest. In affirming the District Court's dismissal of both of these actions under an applicable executive agreement, the D.C. Circuit Court of Appeals noted that lack of jurisdiction under the FSIA constituted an alternative basis for dismissing the actions. *Id.* at 837, 838 and n. 3.

The ninth circuit considered the jurisdictional issue in a similar factual context in *McKeel v. Islamic Republic of Iran,* 722 F.2d 582 (9th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984). In *McKeel,* twelve former hostages and the wives of two ex-hostages sought redress for damages suffered during their

Iranian captivity. The hostages were held in the United States embassy for more than fourteen months. In affirming the lower court's dismissal, the ninth circuit held that federal diversity jurisdiction does not extend to suits against a foreign state, and that there was no basis under sections 1331 and 1332 for jurisdiction over Iran. *Id.* at 585. Turning to the plaintiff's argument under the FSIA, the court held that the United States Embassy of Iran is not "territory of the United States" for purposes of the section 1605(a)(5) waiver of sovereign immunity. *Id.* at 589.

In a similar factual setting, the wife and children of an American citizen murdered in Iran brought an action against Iran, and Kavir, an Iranian revolutionary group, as its agent. *Berkovitz et. al. v. Islamic Republic of Iran, et. al.,* 735 F.2d 329 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 510, 83 L.Ed.2d 401 (1984). Iran argued that it was immune from suit and that the Algerian Declaration,[3] the agreement which led to the release of the American hostages in Iran, settled this wrongful death claim. The Court stated that "sovereign immunity is not merely a defense under the FSIA, its absence is a jurisdictional requirement." *Id.* at 331. The Court explained that jurisdiction in actions against foreign states is comprehensively treated in 28 U.S.C. § 1330. Section 1330(a) provides:

> district courts shall have original jurisdiction ... of any nonjury civil action against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

*Id.* The court concluded that neither the FSIA nor the Treaty of Amity[4] provided an exception to sovereign immunity that would sustain jurisdiction under 28 U.S.C. § 1330. Because the court held that the district court lacked jurisdiction, it did not reach the question whether the Algerian Declaration also precluded the heirs' suit.

In their response to the United States' Statement of Interest, plaintiffs assert, for the first time, an alternative basis for jurisdiction. Plaintiffs contend that they are entitled to base their claims upon two federal criminal statutes and "ordinary principles of international law." Relying upon 18 U.S.C. Section 1201 (Supp.1980) and 18 U.S.C. § 112 (Supp.1980), the plaintiffs maintain that they may bring a private cause of action on their behalf. However, even if plaintiffs satisfy the requirements for implication of a private cause of action, this argument must be rejected.

As previously stated Congress has vested exclusive jurisdiction over suits against foreign state defendants in the FSIA.[5] The FSIA sets forth the sole and exclusive standards involved in resolving questions of sovereign immunity raised by foreign states before federal or state courts in the United States. *McKeel,* 722 F.2d at 587; *see generally* 14 Wright, Miller & Cooper, Federal Practice & Procedure, Jurisdiction, § 3662 at 392 (2d ed. 1985). Moreover,

> [t]he statute is designed to provide a set of comprehensive regulations that will inform potential litigants as to when they can have recourse in the federal and state courts in this country for asserting claims against foreign states.

Wright, *supra* at 381. The primary purpose of the FSIA was to depoliticize sovereign immunity decisions by transferring them from the executive to the judicial branch of government, thereby assuring litigants that such decisions would be made on legal rather than political grounds. *National Airmotive Corp. v. Iran,* 499

---

**3.** Declaration of the Government of the Democratic and Popular Republic of Algeria, Principle B, January 19, 1981, 20 I.L.M. 224 (Algerian Declaration), *enforced by* Executive Order 12283, 46 Fed.Reg. 7927 (January 23, 1981).

**4.** Treaty of Amity, Economic Relations, and Consular Rights, August 15, 1955, United States-Iran, 8 U.S.T. 899, T.I.A.S. 3853.

**5.** It should be noted that even if this action could be brought under the FSIA, it could well be barred by the "act of state" doctrine.

F.Supp. 401 (D.D.C.1980); *see also* Annot., 25 A.L.R.3d 20 (Supp.1984).

■ In conclusion, the plaintiffs' alternative argument is without merit, as jurisdiction over foreign states and their instrumentalities as defendants can be obtained *only* under the FSIA. 28 U.S.C.A. §§ 1330(a), 1332(a)(2); *McKeel*, 722 F.2d at 586. Iran enjoys sovereign immunity and that immunity has not been lifted for the acts involved here by the FSIA. Thus, for the reasons set forth above, this action must be dismissed for lack of jurisdiction.

An appropriate Order has been entered.