854 F.2d 321
 Darrell BEDONI and his parents Sidney Bedoni and Lena
Bedoni, husband and wife, Plaintiffs-Appellants,
v.
NAVAJO-HOPI INDIAN RELOCATION COMMISSION, an independent
administrative agency for the United States of America,
Ralph Watkins, Sandra Massetto, and Hawley Atkinson, as
Commissioners of the NHIRC, and Christopher Bavasi, as
Executive Director thereof, Defendants-Appellees.
 No. 87-1818.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 10, 1987.
Decided June 24, 1988.
Order and Opinion Aug. 11, 1988.
 
 Richard M. Grimsrud, Flagstaff, Ariz., for plaintiffs-appellants.
 Maria A. IIzuka, Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before GOODWIN, and FLETCHER, Circuit Judges, and KING,* District judge.
 ORDER
 The memorandum disposition filed June 24, 1988, is hereby redesignated an opinion. Minor citational changes have been incorporated into the opinion.
 SAMUEL P. KING, Senior District Judge:
 Sidney and Lena Bedoni ("the Bedonis") and their son Darrell Bedoni ("Darrell") (collectively "Plaintiffs") appeal the district court's grant of the Navago-Hopi Indian Relocation Commission's ("NHIRC") motion for summary judgment effectively denying replacement housing benefits to Darrell or, in the alternative, increased replacement housing benefits to the Bedonis. We conclude that the relief prayed for by the Plaintiffs places this dispute within the exclusive jurisdiction of the Court of Claims. We, therefore, vacate the district court's order and remand the Plaintiffs' claims to the district court for consideration of whether the interests of justice require transfer of their claims to the Court of Claims.
 
 I. FACTS
 A. Historical Background
 
 1
 In 1958, pursuant to Congressional authorization and waiver of tribal sovereign immunity,[1] the Hopi Indian Tribe initiated a quiet title action to settle a conflicting claim with the Navajo Indian Tribe to reservation land in northeastern Arizona established by executive order in 1882. By court order, Healing v. Jones, 210 F.Supp. 125 (D.Ariz.1962), aff'd per curiam, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963), the Hopi and Navajo Indian Tribes were given joint, undivided and equal interest in five-sixths of the reservation, an area known as the Joint Use Area ("JUA").
 
 
 2
 Both tribes found their co-tenancy in the JUA unsatisfactory and unworkable, prompting a series of disputes concerning interpretation and compliance with the Healing judgment.[2] In 1974, Congress intervened by providing for the appointment of a mediator to assist in negotiating a settlement and partition of the JUA. Act of Dec. 22, 1974, Pub.L. No. 93-531, 88 Stat. 1712, as amended by Pub.L. No. 96-305, 94 Stat. 930 (1980) (codified as amended at 25 U.S.C. Secs. 640d--640d-28). Congress empowered the Arizona District Court to partition the JUA between the Hopi and Navajo Tribes on an equal basis should the mediation efforts fail. The district court entered a judgment of partition in 1977.[3]
 
 
 3
 To facilitate the partition ordered by the court, Congress created the Navajo-Hopi Indian Relocation Commission ("NHIRC"), as "an independent entity in the executive branch." 25 U.S.C. Sec. 640d-11(a). NHIRC was commissioned with the task of relocating Navajo and Hopi residents who, as a result of the court-directed partition, were located on lands allocated to the other tribe. Id. Sec. 640d-13(a). The scope of the NHIRC's authority included, inter alia, the disbursement of funds equivalent to the "reasonable cost of a decent, safe, and sanitary replacement dwelling to accommodate [a displaced] household." Id. Sec. 640d-14(b)(2).
 
 B. Factual Background
 
 4
 In 1977, the Bedonis applied to the NHIRC for relocation assistance benefits as an eligible relocating head of household pursuant to 25 U.S.C. Sec. 640d-14. In their application, the Bedonis originally listed three children as part of a five-person family to be relocated. At the time of the application, the Bedonis had three children: Darrell, Emerson, and Norma, ages 16, 18, and 22, respectively.
 
 
 5
 Prior to receiving benefits in December of 1979, the Bedonis removed the names of their children from their application. The Bedonis allege that this modification was motivated by advice and encouragement rendered to them by officials of the NHIRC who informed them that their children were eligible for benefits in their own right and the children's names should accordingly be deleted.
 
 
 6
 The Bedonis received a total benefit of $44,200. Of this amount, $38,700 was for replacement housing and corresponds to replacement housing benefits given to a family of three or less persons.
 
 
 7
 In the interim between the Bedonis' application and receipt of benefits, Darrell and Emerson applied separately for relocation benefits. Darrell, age 18 and married at the time of his application, was denied benefits. The certification officer based his denial on two grounds. First, Darrell failed to establish requisite residency on Hopi Partitioned Land ("HPL").[4] After his emancipation, Darrell failed to maintain the required "substantial recurring contacts" with an identifiable homesite on the JUA. The officer further determined that if Darrell had any claim then or in the past, it was through his parents at the time he was a minor. The officer concluded that since his parents had failed to include Darrell as a dependent minor on their application, he could not assert a separate entitlement claim now based on his residency status prior to his emancipation. The NHIRC affirmed the Certification Officer's denial of benefits pursuant to an administrative appeal.
 
 
 8
 Emerson's application was initially denied. Upon his producing additional documents satisfying the residency requirement, NHIRC reversed its determination and granted Emerson relocation benefits.
 
 
 9
 Norma, the Bedonis' daughter, applied for benefits in 1981. She, too, was determined to be ineligible. The Certification Officer determined that Norma, like Darrell, did not meet the requirements of "substantial" and "recurring" contacts sufficient to be a resident, and should have been included in her parents' relocation benefits application. This denial was affirmed on appeal within the NHIRC.
 
 C. Proceedings Below
 
 10
 On October 17, 1985, the Plaintiffs commenced action against the NHIRC, its three commissioners and its executive director. For the purposes of this appeal, the Bedonis' action sought district court review of the NHIRC determination of ineligibility of Darrell under the Administrative Procedure Act, 5 U.S.C. Secs. 706, et seq. In the alternative, if Darrell was properly determined ineligible because he should have been included in his parents' application, the Bedonis sought a declaration under 28 U.S.C. Sec. 2201 and injunctive relief under 28 U.S.C. Sec. 1361, requiring the NHIRC to pay the Bedonis an additional $18,300. This amount corresponds to the difference between replacement housing benefits given families of four or more persons and what the Bedonis actually received.
 
 
 11
 Both parties filed summary judgment motions and the district court entered judgment for the NHIRC on Darrell's claim to replacement housing benefits in his own right and the Bedonis' claim, asserted in the alternative, for increased benefits. This appeal ensued.
 
 II. JURISDICTION OF THE DISTRICT COURT
 
 12
 In addition to defending the propriety of the district court's disposition below, NHIRC raises for the first time on appeal the issue of the district court's subject matter jurisdiction to render any decision in this action. The defense of lack of subject matter jurisdiction may be asserted at any time, at either the trial court or appellate level by either party or the court. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977); Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc. 583 F.2d 426, 439 n. 5 (9th Cir.1978).
 
 
 13
 The Tucker Act is both a waiver of sovereign immunity and a grant of exclusive jurisdiction to the Court of Claims to decide monetary claims in excess of $10,000 "against the United States [or its agencies] founded either upon ... any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States...." 28 U.S.C. Sec. 1346(a)(2) and Sec. 1491(a)(1). District courts have concurrent jurisdiction of claims against the United States and federal agencies for less than $10,000. Id.
 
 
 14
 The district courts, in contrast, have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. Sec. 1331. Pursuant to the Administrative Procedure Act, waiving governmental immunity,[5] the district court may exercise its Section 1331 jurisdiction by reviewing agency action where the relief sought is non-monetary and the claim avers a failure by a federal agency to act as required by law. 5 U.S.C. Sec. 702. The scope of judicial review of agency decisions by district courts is limited, however, by the "preclusion-of-review statutes created or retained by Congress" to which 28 U.S.C. Sec. 1331 is subject. Califano v. Sanders, 430 U.S. 99 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).
 
 
 15
 The Tucker Act is one such limiting statute where the relief sought is monetary and in excess of $10,000. Northside Lumber Co. v. Block, 753 F.2d 1482, 1484 (9th Cir.1985); Rowe v. United States, 633 F.2d 799, 802 (9th Cir.1980). This Court has repeatedly stated, however, that the Tucker Act "does not preclude review of agency action where the relief sought is other than monetary damages." Northside Lumber, 753 F.2d at 1485, Laguana Hermosa Corp. v. Martin, 643 F.2d 1376, 1379 (9th Cir.1981); Rowe, 633 F.2d at 802.
 
 
 16
 The district court is prohibited from evading the preclusive effect of the Tucker Act or infringing upon the exclusive province of the Court of Claims by issuing injunctions or declaring judgments which are designed to serve as res judicata in the Court of Claims to affect a monetary recovery in a subsequent suit. McKeel v. Islamic Republic of Iran, 722 F.2d 582, 590-91 (9th Cir.1983), cert. denied, 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984). Consequently, the label attached or the statutory basis cited by a plaintiff for his prayer for relief or by the court in fashioning a remedy is not controlling. The true nature of the relief sought must be determined.
 
 
 17
 NHIRC asserts that, while Plaintiffs styled their complaint as one seeking a writ of mandamus and review of agency action under the Administrative Procedure Act, the Plaintiffs' true prayer is monetary in nature. NHIRC contends that the relief sought is either the payment of replacement housing benefits to Darrell Bedoni or, in the alternative, an increase in payment to Sidney and Lena Bedoni; both of which exceed $10,000.
 
 
 18
 This Court has, on several occasions, dealt with the tension created by a plaintiff's prayer for relief or a district court's desire to grant relief and the exclusive jurisdictional domain of the Court of Claims carved out by the Tucker Act. In Lee v. Blumenthal, 588 F.2d 1281 (9th Cir.1979), the plaintiff filed an action under 28 U.S.C. Sec. 1361, seeking a writ of mandamus to compel the Secretary of the Treasury to redeem certain flower bonds. The district court issued the writ and we reversed and remanded to the district court to dismiss or transfer to the Court of Claims. We reasoned that the Court of Claims' authority to render judgment for money damages is "founded upon ... any regulation of an executive department" and described as "overly simplistic" an analysis which simply characterized the action as one of contract or one involving the proper interpretation of a statute. 588 F.2d at 1282.
 
 
 19
 In Rowe v. United States, 633 F.2d at 800, plaintiffs sought a district court order compelling the Secretary of the Interior to award oil and gas leases to them as original selectees of the Secretary and money damages. We held that the district court had jurisdiction except to the extent that the plaintiff's claimed damages in excess of $10,000. Id. at 801. In Rowe, the plaintiff sought two distinctly different remedies: money damages and to compel a federal officer to perform a duty other than paying money. Id. at 802.
 
 
 20
 Finally, we held that the district court had jurisdiction to issue a declaratory judgment stating that a corporation possessed contract rights against the United States. Laguna Hermosa, 643 F.2d at 1378-79. The district court does not lose jurisdiction of a claim for non-monetary relief simply because the claim later may be the basis for money relief; but "the Court of Claims' jurisdiction cannot be avoided by a complaint that appears to seek only equitable relief when 'the real effort of the complaining party is to obtain money from the federal government.' " Id. at 1379 (emphasis added), quoting Bakersfield City School District v. Boyer, 610 F.2d 621, 623 (9th Cir.1979); see also McKeel, 722 F.2d at 590-91.
 
 III. CONCLUSION
 
 21
 We conclude that this matter more closely resembles the latter of the two situations described in Laguna Hermosa. The essence of Darrell Bedoni's and his parents' complaint is to compel a federal officer to perform a duty of paying money. Darrell Bedoni is seeking to recover at least the statutory minimum replacement-housing benefit as the head of a household, which at the time of his application in 1979 was $38,700. Similarly, Sidney and Lena seek an increase in benefits in the amount of $18,300. Both these prayers seek relief in excess of $10,000, the exclusivity threshold of the Court of Claims. Furthermore, the authority to render judgment in this case is founded upon statutory law providing guidance to an executive agency which, under Lee, is within the prerogative of the Court of Claims.
 
 IV. DISPOSITION
 
 22
 We have two options available with respect to disposition of this case. We can remand with directions that the district court dismiss for lack of jurisdiction or, in its discretion, transfer to the Court of Claims pursuant to 28 U.S.C. Sec. 1406(c). See Rowe, 633 F.2d at 802; Lee, 588 F.2d at 1283. Alternatively, we have independent authority to transfer actions to the Court of Claims pursuant to 28 U.S.C. Sec. 1631. See Hahn v. United States, 757 F.2d 581, 587-88 (3d Cir.1985); McKeel, 722 F.2d at 591.
 
 
 23
 In McKeel, we chose not to transfer the matter to the Court of Claims sua sponte but remanded to the district court. Section 1631 provides that a transfer is appropriate where it "is in the interest of justice." 28 U.S.C. Sec. 1631. This Court held that a transfer was not necessary to advance the interests of justice since the statute of limitations had not run. 722 F.2d at 591. In Hahn, the Third Circuit did not transfer in order to preserve for the plaintiff the option of reducing his claim to under $10,000, giving the district court concurrent jurisdiction with the Court of Claims. 757 F.2d at 587-88. Consistent with the reasoning in McKeel and Hahn, we remand this matter to the District Court for consideration of whether the interest of justice requires transfer to the Court of Claims. There is no apparent prejudice to Plaintiffs in so doing and they may wish to reduce the amount of relocation benefits they are seeking.
 
 
 24
 We, therefore, VACATE the judgment of the district court and REMAND.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge, District of Hawaii, sitting by designation
 
 
 [1]
 See Act of July 22, 1958, Pub.L. No. 85-547, 72 Stat. 403
 
 
 [2]
 See Hamilton v. Nakai, 453 F.2d 152 (9th Cir.1971), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972); Hamilton v. MacDonald, 503 F.2d 1138 (9th Cir.1974); Sekaquaptewa v. MacDonald, 544 F.2d 396 (9th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977)
 
 
 [3]
 The Navajo disputed the boundaries of the partition order. On appeal, we approved the theory of equality underlying the partition but remanded for further proceedings on the boundary issue. Sekaquaptewa v. MacDonald, 575 F.2d 239 (9th Cir.1978). The district court entered another judgment of partition, which we approved. Sekaquaptewa v. MacDonald, 626 F.2d 113 (9th Cir.1980)
 
 
 [4]
 Pursuant to federal regulations in effect at the time of Darrell's application, a displaced person entitled to replacement-housing benefits had to be a member of the Hopi or Navajo Tribes residing within the JUA and relocated as a consequence of the Relocation Act. 25 C.F.R. Sec. 700.147 (1982). Residency was established by fulfilling either of the following criteria:
 (1) Current Occupancy.
 (2) Maintenance of substantial recurring contacts with an identifiable homesite although the individual is temporarily away for any of the following reasons:
 (i) Employment....
 (ii) Education....
 
 
 [5]
 The Supreme Court held, in Califano v. Sanders, 430 U.S. 99, 104-07, 97 S.Ct. 980, 983-85, 51 L.Ed.2d 192 (1977), that Section 10 of the Administrative Procedure Act (codified at 5 U.S.C. Secs. 701-704) providing generally for judicial review of actions of federal administrative agencies does not afford an implied independent grant to district courts of subject matter jurisdiction to review a decision of such agencies